IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA


SALLY A. SANTEE                         :              CIVIL ACTION
                                        :
            v.                          :
                                        :
LEHIGH VALLEY                           :
HEALTH NETWORK, INC. et al.             :              NO.  13-3774


<u>**REPORT AND RECOMMENDATION**</u>


THOMAS J. RUETER                                   November 27, 2013
United States Magistrate Judge


      Presently before the court is the motion to dismiss plaintiff's First Amended

Complaint for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) (Doc. 9) (the "Motion")

filed by defendants Lehigh Valley Health Network, Inc., Suzanne Goodell, Jaime Brogan, Zelda

Greene, Susan Lawrence, Terry Capuano, Jeri Lemanek and Kathleen Mudri (collectively,

"Defendants"), plaintiff's response thereto (Doc. 14), and Defendants' reply (Doc. 16).  For the

reasons explained below, the court recommends that the motion be granted in part and denied in

part.

**I.      BACKGROUND**

      Plaintiff, Sally A. Santee, is a former employee of defendant Lehigh Valley Health

Network ("LVHN").  In her First Amended Complaint (Doc. 8) (the "Complaint"), plaintiff

alleges, <u>inter alia</u>, that Defendants discriminated against her in violation of her rights under the

Americans with Disabilities Act, 42 U.S.C. § 12101 <u>et seq.</u> ("ADA"), as amended by the ADA

Amendments Act of 2008 ("ADAAA")[1] and the Family Medical Leave Act of 1993, 29 U.S.C. § 2601 et seq. ("FMLA").  Plaintiff avers that she is disabled within the meaning of the ADA and that her disabilities are severe depression and chronic fatigue, which substantially limit the major life activities of concentrating and the ability to process information quickly during intermittent flare-ups of her condition.  (Compl. ¶ 7.)  In her response to the Motion and at oral argument held on November 13, 2013, plaintiff's counsel represented that plaintiff had withdrawn certain of the counts presented in the Complaint.[2]  The only remaining counts are: (1) Count II, disability discrimination under the ADA; (2) Count III, retaliation under the ADA; (3) Count III, hostile work environment under the ADA; and (4) Count V,[3] retaliation under the FMLA.  Thus, the court will address the motion to dismiss only as it pertains to Counts II, III and V of plaintiff's Complaint.

---

[1]     The ADAAA became effective January 1, 2009.  See Pub. L. No. 110-325, § 8, 122 Stat. 3553, 3559 (codified at 29 U.S.C. § 705).  The ADAAA does not have retroactive effect, see Weidow v. Scranton Sch. Dist., 460 F.App'x 181, 185 (3d Cir. 2012) (not precedential), but is applicable to the case at bar, as the alleged discriminatory conduct occurred after January 1, 2009.  See Eastman v. Research Pharm., Inc., 2013 WL 3949236, at *8 (E.D. Pa. Aug. 1, 2013) (applying ADAAA to a case in which the discriminatory conduct, i.e., the employee's termination, occurred after January 1, 2009).

[2]     Plaintiff has withdrawn the following claims and demands: (1) the claim for religious discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq. ("Title VII"), see Resp. at 4; (2) all claims under Pennsylvania Human Relations Act, 43 P.S. § 951 et seq. ("PHRA"), including any claim for punitive damages under the PHRA, see Resp. at 7, 13; (3) the demand for compensatory and punitive damages related to the retaliation claim under the ADA, see Resp. at 12; and (4) any claim for interference or harassment under the FMLA, see Resp. at 13, 15.  Plaintiff also requests the court grant leave to amend her Complaint if the court determines that plaintiff has not sufficiently pled any of her claims.  See Resp. at 16-17.

[3]     The Complaint incorrectly presents two counts labeled "Count IV."  For purposes of this Report and Recommendation, the court will refer to the second "Count IV" as "Count V."

On October 30, 2006, plaintiff became employed by LVHN as a medical transcriptionist, working for Lehigh Valley Heart Specialists.  (Compl. ¶ 17.)  Plaintiff claims that on or about September 21, 2009, she applied for intermittent FMLA leave with LVHN's Employee Health Department.  Id. ¶ 20.  According to plaintiff, she was advised that the Employee Health Department required more information.  Id. ¶¶ 15, 21.  On or about November 16, 2009, plaintiff was transferred to the HIM Medical Records Transcription Department of LVHN, reporting to defendant Suzanne Goodell, who was the Director, Ambulatory/OP Medical Records and Transcription.  Id. ¶¶ 10, 27.  Plaintiff claims that she followed up regarding her FMLA request in January 2010, but was informed that the paperwork was outdated.  Id. ¶¶ 31-35.  Plaintiff filed another FMLA application on February 18, 2010, which was denied on March 13, 2010.  Id. ¶ 36-38.  On April 2, 2010, plaintiff filed another FMLA application, which was approved on April 19, 2010.  Id. ¶ 39.

Plaintiff alleges that shortly after she began working under Ms. Goodell's supervision, Ms. Goodell discovered that plaintiff had applied for intermittent FMLA leave.  Id. ¶ 40.  After learning this, Ms. Goodell allegedly "began treating her less favorably than her similarly situated, non-disabled co-workers by subjecting her to different standards for her work, changing the expectations of her position, personally attacking her character, and writing her up for absences."  Id. ¶ 41.  See id. ¶¶ 42-46 (alleged harassing statements by Ms. Goodell to plaintiff).  In February and March 2010, Ms. Goodell issued written warnings to plaintiff regarding several unexcused absences.  See id. ¶¶ 47-59.

On April 30, 2010 and May 4, 2010, plaintiff complained to Jaime Brogan, an employee in LVHN's Human Resources Department "about Ms. Goodell's treatment of her."  Id.

3

¶¶ 11, 63.  According to the Complaint, plaintiff informed Ms. Brogan that "Ms. Goodell was treating [plaintiff] differently since she first requested FMLA and stated that she was in fear of Ms. Goodell's escalating behavior," but Ms. Brogan "did not do anything to help resolve the situation."  Id. ¶¶ 63-64.  Plaintiff avers that on April 30, 2010, plaintiff "hand-delivered written complaints to Mses. Brogan and Goodell about how Ms. Goodell was treating her due to her FMLA requests and her disabilities."  Id. ¶ 68.  On May 28, 2010, plaintiff claims that she sent an email to Ms. Goodell with blind copies to defendants Zelda Greene, LVHN Administrator/Health Information Management, Susan Lawrence, LVHN Vice President of Care Continuum, Terry Capuano, LVHN's Chief Operating Officer, and Ms. Brogan "which rebutted write-ups that Ms. Goodell had issued to [plaintiff] as well as Ms. Goodell's final and last and final [sic] warning. [Plaintiff's] email complained that Ms. Goodell had been treating her this way since she first requested FMLA."  Id. ¶¶ 12-14, 65.  Plaintiff claims that "Mses. Brogan, Greene, Lawrence, and Capuano did not do anything to help resolve the situation."  Id. ¶ 66.  LVHN terminated plaintiff's employment on June 30, 2010.  Id. ¶ 68.

On April 18, 2011, plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging harassment and discrimination based on her race, color, religion, and disability, and retaliation for engaging in protected conduct.  On June 28, 2013, plaintiff filed the present action.  (Doc. 1.)[4]

---

[4]      Plaintiff received a right to sue letter from the EEOC on July 29, 2013.  See Doc. 8, Exh. A.

4

## II.     DISCUSSION

When considering a motion to dismiss a complaint pursuant to Federal Rule of

Civil Procedure 12(b)(6), the court must accept as true all of the factual allegations contained in

the complaint.  Erickson v. Pardus, 551 U.S. 89, 94 (2007) (citing Bell Atl. Corp. v. Twombly,

550 U.S. 544, 555-56 (2007)).  To survive dismissal, "a complaint must contain sufficient factual

matter, accepted as true, to state a claim to relief that is plausible on its face."  Ashcroft v. Iqbal,

556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570).  This requires "more than labels

and conclusions, and a formulaic recitation of the elements of a cause of action will not do."

Twombly, 550 U.S. at 555.  The Third Circuit has stated:

> [A]fter Iqbal, when presented with a motion to dismiss for failure to state a claim,
> district courts should conduct a two-part analysis.  First, the factual and legal
> elements of a claim should be separated.  The District Court must accept all of the
> complaint's well-pleaded facts as true, but may disregard any legal conclusions.
> Second, a District Court must then determine whether the facts alleged in the
> complaint are sufficient to show that the plaintiff has a "plausible claim for
> relief."  In other words, a complaint must do more than allege the plaintiff's
> entitlement to relief.  A complaint has to "show" such an entitlement with its
> facts.  As the Supreme Court instructed in Iqbal, "[w]here the well-pleaded facts
> do not permit the court to infer more than the mere possibility of misconduct, the
> complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to
> relief.'"  This "plausibility" determination will be "a context-specific task that
> requires the reviewing court to draw on its judicial experience and common
> sense."

Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009) (internal citations and

quotations omitted).

### A.     ADA Claims

For plaintiff's ADA claims to be timely, the alleged unlawful employment

practice would have needed to occur and to have been communicated to plaintiff within 300 days

prior to the filing of her Charge of Discrimination with the EEOC.  Aubrey v. City of Bethlehem, Fire Dept., 466 F.App'x 88, 92 (3d Cir. 2012) (citing 42 U.S.C. § 2000e–5(e)(1); Callowhill v. Allen–Sherman–Hoff Co., 832 F.2d 269, 271 (3d Cir. 1987) ("In a state such as Pennsylvania which has an agency performing functions similar to those of the EEOC, the time for filing is extended to 300 days . . . .")).[5]  Plaintiff filed her charge with the EEOC on April 18, 2011. (Resp. at 1.)  The parties correctly agree that the relevant statute of limitations period for plaintiff's ADA claims runs back 300 days from April 18, 2011 to June 22, 2010.  In other words, any ADA claim based on a discrete act that occurred before June 22, 2010 is time-barred.

### 1.      Count II - ADA Disability Discrimination

To present a prima facie case of disability discrimination under the ADA, a plaintiff must establish that she (1) has a "disability," (2) is a "qualified individual," and (3) has suffered an adverse employment action because of that disability.  Turner v. Hershey Chocolate

---

[5]      The Third Circuit recently has explained the timing of the statute of limitations in a Title VII case:

> To bring suit under Title VII, a claimant in a deferral state, such as Pennsylvania, must first file a complaint with the EEOC within 300 days of the alleged unlawful employment practice. 42 U.S.C. § 2000e–5(e)(1).  "[D]iscrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges."  Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 113, 122 S. Ct. 2061, 153 L.Ed. 2d 106 (2002).  A discrete act in itself constitutes a separate actionable unlawful employment practice.  Id. at 114, 122 S. Ct. 2061. Discrete acts include, for example, "termination, failure to promote, denial of transfer, or refusal to hire."

Mandel v. M & Q Packaging Corp., 706 F.3d 157, 165 (3d Cir. 2013).  The ADA incorporates Title VII's enforcement procedures and remedies.  See 42 U.S.C. § 12117(a); Eshelman v. Agere Sys., Inc., 554 F.3d 426, 440 n.7 (3d Cir. 2009).

U.S., 440 F.3d 604, 611 (3d Cir. 2006) (citing Buskirk v. Apollo Metals, 307 F.3d 160, 166 (3d Cir. 2002); Gaul v. Lucent Techs. Inc., 134 F.3d 576, 580 (3d Cir. 1998)).  Under the ADA, the term "disability" means: (1) a physical or mental impairment that substantially limits one or more major life activities; (2) a record of such impairment; or (3) being regarded as having such an impairment.  42 U.S.C. § 12102(1).  Major life activities "include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working."  42 U.S.C. § 12102(2)(A)(1).

At the motion to dismiss stage, however, this court must determine whether plaintiff pleaded she is an individual with a disability, not whether plaintiff has established a prima facie case of disability discrimination.  Fowler v. UPMC Shadyside, 578 F.3d 203, 213 (3d Cir. 2009) ("Even post-Twombly, it has been noted that a plaintiff is not required to establish the elements of a prima facie case but instead, need only put forth allegations that 'raise a reasonable expectation that discovery will reveal evidence of the necessary element.'").  Rather, the court must accept as true all of the factual allegations contained in the complaint and draw reasonable inferences in favor of the plaintiff.  Iqbal, 556 U.S. at 678.  To survive the motion to dismiss, the Complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."  See id.

Defendants contend that plaintiff has not plausibly alleged a disability under the ADA.  See Mot. 12-16.  This court disagrees.  In her Complaint, plaintiff alleges that she is disabled within the meaning of the ADA because she suffers from an impairment that substantially limits one or more major life activities, has a record of such an impairment, and/or

is regarded as having such an impairment.  (Compl. ¶ 6.)  Plaintiff further represents that her

"disabilities are severe depression and chronic fatigue, which substantially limit major life

activities, including concentrating and the ability to process information quickly during

intermittent flare-ups of her conditions." Id. ¶ 7.  Depression and other mental disorders may

qualify as impairments under the ADA.  Bennett v. Unisys Corp., 2000 WL 33126583, at *4

(E.D. Pa. Dec. 11, 2000); Shannon v. City of Philadelphia, 1999 WL 1065210, at *2 (E.D. Pa.

Nov. 23, 1999); Sarko v. Penn–Del Directory Co., 968 F. Supp. 1026, 1035 (E.D. Pa. 1997).

Chronic fatigue syndrome also may be a disability under the ADA.  See Valle-Arce v. Puerto

Rico Ports Auth., 651 F.3d 190, 197-202 (1st Cir. 2011) (finding employee who suffered from

chronic fatigue syndrome met prima facie case for failure to accommodate under ADA and met

prima facie case for retaliation under ADA).  Concentrating is listed as a major life activity in the

ADA.  See 42 U.S.C. § 12102(2)(A)(1).  Thus, plaintiff has adequately alleged that she has a

disability.[6]

---

[6]      Plaintiff argues in the alternative that she was regarded by LVHN as disabled
and/or had a record of an impairment.  See Resp. 10-11.  The court will not address this
alternative argument.
         The court also is not persuaded by Defendants' argument that the allegations in
plaintiff's Complaint fall far short of plausibly alleging a substantially limiting impairment under
the ADA.  See Mot. at 13-14.  "[T]the ADAAA requires a 'less searching analysis' of whether a
plaintiff is 'substantially limited.'"  Eastman v. Research Pharm., Inc., 2013 WL 3949236, at *8
(E.D. Pa. Aug. 1, 2013) (citing Kravits v. Shinseki, 2012 WL 604169, at * 17 (W.D. Pa. Feb. 24,
2012)).  Under the ADAAA, "substantially limits" is "not meant to be a demanding standard."
See 29 C.F.R. § 1630.2(j)(1)(I) and (iii) (EEOC regulations).  "Rather, 'the determination of
whether an impairment substantially limits a major life activity requires an individualized
assessment,' and should 'require a degree of functional limitation that is lower than the standard
for 'substantially limits' applied prior to the ADAAA.'"  Eastman, 2013 WL 3949236, at *8
(quoting Cohen v. CHLN, Inc., 2011 WL 2713737, at *7 (E.D. Pa. July 13, 2011)).

Defendants also argue that plaintiff has not plausibly alleged that any possible adverse employment action, including her termination, "had anything to do with her alleged depression and/or chronic fatigue." (Mot. at 15-16.) The court finds, however, that plaintiff has alleged sufficient facts to plausibly support the conclusion that she was terminated because of her disability. Plaintiff alleges that she suffered from a disability, that she was treated less favorably than similarly situated employees after her supervisor learned that she had applied for FMLA leave because of her disabilities, that she complained about her supervisor's treatment of her, and that her employment was terminated by LVHN on June 30, 2010. See Compl. ¶¶ 6-7, 40-59, 63-68. Under the standards of Fowler, Twombly and Iqbal, plaintiff's Complaint states a claim to relief that is plausible on its face.

The court, therefore, recommends that the motion to dismiss be denied with respect to plaintiff's claim of disability discrimination against LVHN under the ADA.

## 2.   Count III - ADA Retaliation

The ADA provides: "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by [the ADA] or because such individual had made a charge . . . under [the ADA]." 42 U.S.C. § 12203(a). The ADA further states: "[i]t shall be unlawful to coerce, intimidate, threaten, or interfere with an individual in the exercise or enjoyment . . . of any right granted or protected by [the ADA]." 42 U.S.C. § 12203(b). In order to establish a prima facie case of retaliation under the ADA, a plaintiff must show that: (1) she undertook some protected activity, (2) that she suffered an adverse employment action, and (3) that there exists a causal connection between the two. Williams v. Philadelphia Hous. Auth. Police Dep't, 380 F.3d 751, 759 (3d Cir. 2004); Krouse v. Am.

Sterilizer Co., 126 F.3d 494, 500-01 (3d Cir. 1997).[7]

    Taking the allegations in her Complaint as true, the court concludes that plaintiff's Complaint sets forth sufficient facts to state a plausible claim of ADA retaliation.  See Fowler, 578 F.3d at 213 (the facts alleged in the complaint must be sufficient to show that the plaintiff has a plausible claim for relief).  Plaintiff avers that she engaged in protected activity when she requested reasonable accommodations for her disabilities and when she complained that her supervisor was treating her differently because of her disabilities.  (Compl. ¶¶ 63-68, 95-97.)  Plaintiff further alleges that LVHN took adverse action against her by terminating her employment after plaintiff engaged in protected activity.  Id. ¶¶ 68, 96.  Moreover, plaintiff sufficiently alleges a causal connection between the protected activity and the adverse employment action.  According to the Complaint, Ms. Goodell issued a final warning to plaintiff for alleged performance issues on April 30, 2010; on April 30 and May 4, 2010, plaintiff complained to Human Resources that Ms. Goodell treated her differently than her co-workers; on May 28, 2010 plaintiff sent an email to several managers and supervisors at LVHN regarding Ms. Goodell's treatment of plaintiff; and plaintiff's employment was terminated on June 30, 2010.  See Compl. ¶¶ 59, 63, 65, 67, 68, 96.  See Shellenberger v. Summit Bancorp, Inc., 318 F.3d 183, 189 n.9 (3d Cir. 2003) ("[T]he timing of the alleged retaliatory action must be 'unusually suggestive' of retaliatory motive before a causal link will be inferred.").

    The court finds that plaintiff has adequately pled a claim for relief under the standards announced in Fowler, Twombly and Iqbal.  Therefore, the court recommends that

---

    [7] As noted supra, plaintiff's employment with LVHN was terminated on June 30, 2010.  Thus, plaintiff's claim for ADA retaliation based on this adverse employment action is within the relevant statute of limitations period and is timely.

Defendants' motion to dismiss be denied with respect to plaintiff's retaliation claim under the ADA against LVHN.

### 3.    Count III - ADA Hostile Work Environment[8]

Defendants contend that plaintiff's claim of a hostile work environment under the ADA is time-barred.  To be timely, plaintiff must allege one act contributing to the hostile work environment within the 300 days prior to the filing of the EEOC charge.  Again, plaintiff filed her Charge with the EEOC on April 18, 2011.  Thus, plaintiff must allege at least one act upon which her claim is based that occurred on or after June 22, 2010.  In the Complaint, the only adverse act that plaintiff alleges that occurred after June 22, 2010, was her termination on June 30, 2010.

Plaintiff contends, however, that the adverse acts alleged in the Complaint that occurred prior to June 22, 2010 constitute background evidence of hostile work environment claim and are relevant to whether acts taken inside the filing period were discriminatory.  See Resp. at 4-7.  Plaintiff further claims that the continuing violation doctrine extends the statutory period for this claim.

The Third Circuit recently explained the proper application of the continuing violation doctrine:

Under the continuing violation doctrine, discriminatory acts that are not

_____

[8]    It is unclear from a reading of plaintiff's Complaint which count presents the hostile work environment claim under the ADA.  That is, Counts II and III of the Complaint each contain components of the claim.  In each separate Count, plaintiff incorporates by reference the allegations set forth in the prior Counts.  See Compl. ¶¶ 78-93, 95-100; see also, Compl. ¶ 94.  In any event, from their submissions to the court, Defendants were clearly aware that plaintiff sought to assert a hostile work environment claim under the ADA in the Complaint.

individually actionable may be aggregated to make out a hostile work
environment claim; such acts "can occur at any time so long as they are linked in a
pattern of actions which continues into the applicable limitations period."
O'Connor v. City of Newark, 440 F.3d 125, 127 (3d Cir. 2006) [(citing Nat'l R.R.
Passenger Corp. v. Morgan, 536 U.S. 101, 105, 122 S. Ct. 2061, 153 L. Ed.2d 106
(2002)], (explaining court may consider "entire scope of a hostile work
environment claim . . . so long as any act contributing to that hostile environment
takes place within the statutory time period")). A hostile work environment claim
"is composed of a series of separate acts that collectively constitute one 'unlawful
employment practice'" and "cannot be said to occur on any particular day."
Morgan, 536 U.S. at 115–17, 122 S. Ct. 2061. To allege a continuing violation,
the plaintiff must show that all acts which constitute the claim are part of the same
unlawful employment practice and that at least one act falls within the applicable
limitations period. See Morgan, 536 U.S. at 122, 122 S. Ct. 2061; see also West
v. Phila. Elec. Co., 45 F.3d 744, 754–55 (3d Cir. 1995) (explaining plaintiff must
show that at least one act occurred within the filing period and that the harassment
is "more than the occurrence of isolated or sporadic acts of intentional
discrimination").

Mandel v. M & Q Packaging Corp., 706 F.3d 157, 165-66 (3d Cir. 2013). Thus, the doctrine

allows allegedly discriminatory acts that are not actionable individually to be aggregated to

present a discrimination claim. O'Connor, 440 F.3d at 127.

   Plaintiff's termination on June 30, 2010, however, is a discrete act and is not a

component of a hostile work environment claim. With respect to discrete acts, the Third Circuit

stated:

"[D]iscrete discriminatory acts are not actionable if time barred, even when they
are related to acts alleged in timely filed charges." Nat'l R.R. Passenger Corp. v.
Morgan, 536 U.S. 101, 113, 122 S. Ct. 2061, 153 L. Ed.2d 106 (2002). A discrete
act in itself constitutes a separate actionable unlawful employment practice. Id. at
114, 122 S. Ct. 2061. Discrete acts include, for example, "termination, failure to
promote, denial of transfer, or refusal to hire." Id.

Mandel, 706 F.3d at 165.

   Thus, the court agrees with Defendants' assertion that the continuing violation

doctrine does not apply to plaintiff's ADA hostile work environment claim. The alleged

discriminatory act that falls within the limitations period, i.e., the termination, stands on its own and, if discriminatory, would be actionable individually.  Therefore, plaintiff cannot rely on the termination on June 30, 2010 as a "component act" to establish a hostile work environment claim.  See also Fusco v. Bucks Cnty. of Pennsylvania, 2009 WL 4911938, at *8 (E.D. Pa. Dec. 18, 2009) (Robreno, J.) (finding "the failure to promote, wrongful discipline, compensation decisions and undesirable assignments are discrete events, and are not subject to a continuing violation analysis").

Furthermore, the continuing violation doctrine does not apply if a plaintiff was aware of, and had complained about, hostile treatment because "allowing the plaintiff 'to avoid the statutory timely filing requirement by invoking the continuing violations doctrine would be inconsistent with the doctrine's equitable premise that the statute of limitations should not begin to run until a reasonable person would be aware that his or her rights have been violated.'" Fusco, 2009 WL 4911938, at *8 (quoting Jones v. WDAS FM/AM Radio Stations, 74 F.Supp. 2d 455, 463 (E.D. Pa. 1999) (Robreno, J.)).  In the present case, plaintiff was aware that her rights had been violated at least as early as April 30, 2010 when she delivered written complaints to defendants Brogan and Goodell about Ms. Goodnell's treatment of plaintiff.  See Compl. ¶¶ 63, 67.  Thus, plaintiff may not proceed on her ADA hostile work environment claim under the continuing violation theory.

The court, therefore, recommends that the Motion be granted with respect to plaintiff's ADA hostile work environment claim.

B.      **FMLA Claim**

In Count V of the Complaint, plaintiff alleges that Defendants improperly retaliated against her in violation of her rights under the FMLA.  See Compl. ¶¶ 105-21.  Plaintiff filed her Complaint on June 28, 2013 and LVHN terminated her employment on June 30, 2010.  Because plaintiff filed her lawsuit more than two years, but less than three years, following the last act which could form the basis of any claim under the FMLA, plaintiff must plausibly allege a "willful" violation of the FMLA to survive dismissal.[9]  29 U.S.C. § 2617(c)(2) ("In the case of such action brought for a willful violation of section 2615 of this title, such action may be brought within 3 years of the date of the last event constituting the alleged violation for which such action is brought.").

---

[9]      The FMLA does not define willful.  Furthermore,

> [n]either the Supreme Court nor the Third Circuit have defined "willfulness" under the FMLA.  However, other courts within the Third Circuit have joined other circuits in adopting the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq., definition of willfulness.  See Waites v. Kirkbride Center, No. 10–1487, 2011 WL 2036689, at *9–*10 (E.D. Pa. May 23, 2011).  Therefore, "[t]o successfully allege a willful violation of the FMLA, the plaintiff must show that the employer knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute."  Caucci v. Prison Health Servs., Inc., 153 F.Supp. 2d 605, 609 (E.D. Pa. 2001) (citing McLaughlin v. Richland Shoe Co., 486 U.S. 128, 133, 108 S. Ct. 1677, 100 L.Ed. 2d 115 (1988)).  A plaintiff must do more than show that the employer knew the FMLA was in the picture, and must show more than mere negligence.  Rigel v. Wilks, No. 03–971, 2006 WL 3831384, at *13 (M.D. Pa. Dec. 28, 2006).

Melilli v. Southeastern Pennsylvania Transp. Auth., 2012 WL 4473132, at *4 (E.D. Pa. Sept. 28, 2012) (Joyner, J).

14

To prevail on a claim of discrimination or retaliation based on FMLA leave, a plaintiff must show that: "(1) he took an FMLA leave, (2) he suffered an adverse employment decision, and (3) the adverse employment decision was causally related to his leave." Conoshenti v. Public Serv. Elec. & Gas Co., 364 F.3d 135, 146 (3d Cir. 2004).  Defendants argue that plaintiff has not properly pled a claim of FMLA retaliation because the Complaint does not allege that plaintiff actually took leave and plaintiff has not plausibly alleged that her termination was causally related to any FMLA leave.  (Mot. at 23-25.)

The court determines, however, that plaintiff has adequately pled a claim of FMLA retaliation against LVHN under the standards announced in Fowler, Twombly and Iqbal. With respect to the first element of an FMLA retaliation claim, plaintiff alleges that she applied for and was eligible for FMLA leave, that she gave notice of her need to take leave, and that she was eventually approved for intermittent FMLA leave.  See Compl. ¶¶ 20-26, 31-39, 106, 109-10.  Although she does not provide the specific dates, plaintiff alleges that she took FMLA leave. See id. ¶ 118 ("Ms. Santee's application for FMLA and taking FMLA leave was a determinative factor in Defendants' actions, including but not limited to their decision to terminate Ms. Santee's employment").  Second, plaintiff plausibly pled that she suffered an adverse employment action when LVHN terminated her employment on June 30, 2010.  Id. ¶ 68, 112. With respect to the third prong of an FMLA retaliation claim, plaintiff plausibly pled that the adverse employment action was causally related to the leave.  Plaintiff alleges that she complained that she was being retaliated against for exercising her FMLA rights.  Id. ¶¶ 63, 65, 67, 115.  That is, plaintiff alleges that she complained to her supervisors and LVHN management on April 30, May 4, and May 28, 2010 regarding the exercise of her FMLA rights and that LVHN

terminated her employment on June 30, 2010.  See id.; see also id. ¶ 68, 112.  As discussed supra with respect to plaintiff's ADA retaliation claim, such facts sufficiently allege a causal connection between the protected activity and the adverse employment action.  See Shellenberger v. Summit Bancorp, Inc., 318 F.3d 183, 189 n.9 (3d Cir. 2003) ("[T]he timing of the alleged retaliatory action must be 'unusually suggestive' of retaliatory motive before a causal link will be inferred.").

Defendants also argue, in the alternative, that plaintiff's FMLA retaliation claim fails as a matter of law with respect to the individual defendants, Suzanne Goodell, Jaime Brogan, Zelda Greene, Susan Lawrence, Terry Capuano, Jeri Lemanek and Kathleen Mudri in their individual capacities.  (Mot. at 25-28.)  The Third Circuit has found that "an individual is subject to FMLA liability when he or she exercises 'supervisory authority over the complaining employee and was responsible in whole or part for the alleged violation' while acting in the employer's interest."  Haybarger v. Lawrence Cnty. Adult Prob. and Parole, 667 F.3d 408, 417 (3d Cir. 2012) (quoting Riordan v. Kempiners, 831 F.2d 690, 694 (7th Cir. 1987)).  Furthermore, "an individual supervisor has adequate authority over the complaining employee when the supervisor 'independently exercise[s] control over the work situation.'"  Id. (quoting Donovan v. Grim Hotel Co., 747 F.2d 966, 972 (5th Cir. 1984)).  The Third Circuit further elaborated:

> In analyzing an individual supervisor's control over the employee under the FLSA and the FMLA, most courts look to the "economic reality" of the employment situation, examining whether the individual supervisor carried out the functions of an employer with respect to the employee.  See, e.g., Donovan v. Agnew, 712 F.2d 1509, 1510 (1st Cir. 1983) (analyzing the economic reality to determine whether an individual is subject to liability under the FLSA); Herman v. RSR Sec. Servs., 172 F.3d 132, 139 (2d Cir. 1999) (same); Donovan, 747 F.2d at 972 (same); Dep't of Labor v. Cole Enters., 62 F.3d 775, 778 (6th Cir. 1995) (same); Mason v. Mass. Dep't of Envtl. Prot., 774 F.Supp. 2d 349, 367 (D. Mass. 2011)

(discussing economic reality in the context of individual liability under the FMLA); Smith v. Westchester Cnty., 769 F.Supp. 2d 448, 475–76 (S.D. N.Y. 2011) (applying the economic reality test to determine whether an individual is liable under the FMLA. As we recognized in applying the economic reality test in the context of the FLSA, whether a person functions as an employer depends on the totality of the circumstances rather than on "technical concepts of the employment relationship." [Hodgson v. Arnheim & Neely, Inc., 444 F.2d 609, 612 (3d Cir. 1971), rev'd on other grounds, 410 U.S. 512, 93 S. Ct. 1138, 35 L.Ed. 2d 463 (1973)].

The Second Circuit held that some of the relevant factors in ascertaining the economic reality of the employment situation include whether the individual "(1) had the power to hire and fire the employee[ ], (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." Herman, 172 F.3d at 139 (quoting Carter v. Dutchess Cmty. Coll., 735 F.2d 8, 12 (2d Cir. 1984)) (citation omitted). The Second Circuit cautioned, however, that courts must consider "any relevant evidence" and "[n]o one of the four factors standing alone is dispositive." Id. (citing Rutherford Food Corp. v. McComb, 331 U.S. 722, 730, 67 S. Ct. 1473, 91 L.Ed. 1772 (1947)).

Id. at 417-18.

With this standard in mind, the court determines that plaintiff has failed to plausibly plead a claim of individual liability against defendants Brogan, Capuano, Lawrence and Greene. In the Complaint, plaintiff alleges that "[o]n May 28, 2010, [plaintiff] sent an e-mail to Ms. Goodell with blind copies to Mses. Brogan, Greene, Lawrence, and Capuano, which rebutted write-ups that Ms. Goodell had issued to [plaintiff] as well as Ms. Goodell's final and last warning. [Plaintiff's] e-mail complained that Ms. Goodell had been treating her this way since she first requested FMLA." (Compl. ¶ 65.) Plaintiff also alleges that "Mses. Brogan, Greene, Lawrence, and Capuano did not do anything to help resolve the situation." Id. ¶ 66. Earlier in the Complaint, plaintiff identified each of these individuals and listed their job titles within the LVHN organization. See id. ¶¶ 10-14. With respect to Ms. Brogan who was an employee of

LVHN's Human Resources Department, plaintiff alleges that she complained to Ms. Brogan about Ms. Goodell's treatment of plaintiff on April 30 and May 4, 2010 and that she hand-delivered a written complaint to Ms. Brogan on April 30, 2010 regarding Ms. Goodell's treatment of plaintiff.  See id. ¶¶ 63, 67.  Plaintiff's allegations against defendants Brogan, Capuano, Lawrence and Greene do not plausibly allege, as they must to satisfy the Haybarger standard, that any of these individuals had supervisory authority over plaintiff and was responsible in whole or part for her termination while acting in the LVHN's interest.  Furthermore, looking at the "economic reality" of the employment situation, plaintiff has not plausibly pled any facts that suggest that any of these individual defendants had the power to hire and fire plaintiff, supervised and controlled employee work schedules or conditions of employment, determined the rate and method of payment, and/or maintained employment records.  Plaintiff's claim against defendants Brogan, Capuano, Lawrence and Greene should be dismissed.  See, e.g., White v. Eberle & BCI Servs., LLC, 2013 WL 211249, at *4 (D.N.J. Jan. 17, 2013) (finding that plaintiff's "limited and conclusory assertions do not satisfy Plaintiff's burden for surviving a motion to dismiss" on FMLA claim); Freeman v. Philadelphia Hous. Auth., 2012 WL 3235323, at *8-9 (E.D. Pa. Aug. 8, 2012) (dismissing claim against individual defendant because the allegations did not meet the Haybarger standard and were "sparse at best").

The court similarly finds that plaintiff has failed to plausibly plead a claim of individual liability against defendants Lemanek and Mudri, who were employed in the Employee Health Department.  Plaintiff alleges that these individuals communicated with plaintiff regarding her requests for FMLA leave during the time frame September 2009 to April 2010.

18

See Compl. ¶¶ 21-23, 25-26, 31-39.  As discussed supra, the only timely FMLA retaliation claim plaintiff can present relates to plaintiff's termination.  Because plaintiff makes no allegation that these individuals were involved in the termination of plaintiff's employment, any FMLA retaliation claim against defendants Lemanek and Mudri are time-barred.  Furthermore, plaintiff has made no allegation that these individuals satisfy the Haybarger standard - that either defendant Lemanek or defendant Mudri had supervisory authority over plaintiff and was responsible in whole or part for the alleged violation, i.e., the termination of employment, while acting in LVHN's interest.  Thus, plaintiff has failed to plausibly plead a claim of individual liability based on an FMLA retaliation claim against defendants Lemanek and Mudri.

With respect to defendant Goodell, however, plaintiff has sufficiently pled a plausible claim for relief.  In the Complaint, plaintiff alleges that Ms. Goodell was plaintiff's supervisor who made decisions regarding plaintiff's employment, including discipline issues and work schedule.  See Compl. ¶¶ 10, 28, 29, 40, 41, 44, 46-51, 57-59.  Plaintiff's Complaint satisfies the Haybarger standard with respect to her allegations against Ms. Goodell.

For the foregoing reasons, the court recommends that the Motion be granted with respect to plaintiff's FMLA retaliation claim against the individual defendants Brogan, Capuano, Lawrence, Greene, Lemanek, and Mudri.  The court further recommends that the Motion be denied with respect to defendants Goodell and LVHN for purposes of plaintiff's FMLA retaliation claim.

19

### III.    CONCLUSION

The court respectfully recommends that the motion to dismiss (Doc. 9) be

**GRANTED IN PART** and **DENIED IN PART**, as follows:

(1)     Plaintiff's request to withdraw the following claims should be

**GRANTED**: (a) the claim for religious discrimination under Title VII; (b) all claims under the

PHRA, including any claim for punitive damages under the PHRA; (c) the demand for

compensatory and punitive damages related to the retaliation claim under the ADA, as amended;

and (d) any claim for interference or harassment under the FMLA.

(2)     The Motion should be **GRANTED** to the extent that it seeks to dismiss:

(a) the hostile work environment claim under the ADA, and (b) the claim for FMLA retaliation

against the individual defendants Brogan, Capuano, Lawrence, Greene, Lemanek, and Mudri.

(3)     The Motion should be **DENIED** to the extent that it seeks to dismiss: (a)

the claim for ADA disability discrimination (Count II), (b) the claim for ADA retaliation (Count

III), and (c) the claim for FMLA retaliation against defendants LVHN and Goodell.

(4)     The court further recommends that plaintiff's request for leave to amend

her Complaint be denied.[10]

The parties may file objections to the Report and Recommendation.  <u>See</u> Loc. R.

Civ. P. 72.1.  Failure to file timely objections may constitute a waiver of any appellate rights.


BY THE COURT:


_/s/ Thomas J. Rueter_____
THOMAS J. RUETER
United States Magistrate Judge

---

[10]     In her Response, plaintiff seeks permission to amend the Complaint should the court determine that plaintiff has not sufficiently pled any of her claims.  <u>See</u> Resp. at 16-17. Although a court should freely grant leave to amend the complaint when justice so requires, <u>see</u> Fed. R. Civ. P. 15(a), a party's motion to amend may properly be denied when amendment would be futile.  <u>See</u> <u>In re Burlington Coat Factory Sec. Litig.</u>, 114 F.3d 1410, 1434 (3d Cir. 1997) (noting that a motion to amend may be denied on futility grounds if the complaint, as amended, would fail to state a claim upon which relief could be granted).  With respect to the ADA hostile work environment claim, there are only eight days, between June 22, 2010 and June 30, 2010, on which a discriminatory act could have taken place to defeat the statute of limitations issue. Plaintiff's counsel acknowledged at oral argument that plaintiff presently does not have further evidence of discriminatory acts on the part of LVHN.  Thus, leave to amend need not be granted for it would be futile.  Furthermore, leave to amend the FMLA retaliation claim against the individual defendants Brogan, Capuano, Lawrence, Greene, Lemanek, and Mudri would similarly be futile and need not be granted.  Plaintiff's allegation that defendants Brogan, Capuano, Lawrence and Greene should be individually liable for the termination decision because they received a blind carbon copy of an email is too attenuated and does not sufficiently allege a causal connection with the termination.  Moreover, the facts alleged in the Complaint against defendants Lemanek and Mudri simply do not concern plaintiff's termination, which is the only purported discriminatory act that is relevant to the FMLA retaliation claim.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SALLY A. SANTEE | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| LEHIGH VALLEY | : | |
| HEALTH NETWORK, INC. et al. | : | NO.  13-3774 |

## ORDER

AND NOW, this          day of                    , 2014, upon careful and

independent consideration of the pleadings and record herein, and after review of the Report and

Recommendation of United States Magistrate Judge Thomas J. Rueter, it is hereby

**ORDERED**

1.    The Report and Recommendation is **APPROVED** and **ADOPTED**; and

2.    The Motion to Dismiss plaintiff's First Amended Complaint pursuant to

Federal Rules of Civil Procedure 12(b)(6) filed by defendants Lehigh Valley Health Network,

Inc., Suzanne, Goodell, Jaime Brogan, Zelda Greene, Susan Lawrence, Terry Capuano, Jeri

Lemanek and Kathleen Mudri (Doc. 9) is **GRANTED IN PART** and **DENIED IN PART** as

follows:

a.    Plaintiff's request to withdraw the following claims is

**GRANTED**: (I) the claim for religious discrimination under Title VII of the Civil Rights Act of

1964, 42 U.S.C. § 2000e, et seq.; (ii) all claims under the Pennsylvania Human Relations Act, 43

P.S. § 951 et seq. ("PHRA"), including any claim for punitive damages under the PHRA; (iii) the

demand for compensatory and punitive damages related to the retaliation claim under the

Americans with Disabilities Act, 42 U.S.C. § 12101 et seq. ("ADA"), as amended by the ADA

Amendments Act of 2008; and (iv) any claim for interference or harassment under the Family Medical Leave Act of 1993, 29 U.S.C. § 2601 <u>et</u> <u>seq.</u> ("FMLA").

   b.   The Motion to Dismiss is **GRANTED** to the extent that it seeks to dismiss: the hostile work environment claim under the ADA, and the FMLA retaliation claim against the individual defendants Brogan, Capuano, Lawrence, Greene, Lemanek, and Mudri.

   c.   The Motion to Dismiss is **DENIED** to the extent that it seeks to dismiss: (I) the claim for ADA disability discrimination (Count II), (ii) the claim for ADA retaliation (Count III), and (iii) the claim for FMLA retaliation against defendants LVHN and Goodell.

   d.   Plaintiff's request for leave to amend her complaint is **DENIED**.


   BY THE COURT:


   _____
   EDUARDO C. ROBRENO, J.

2